FILED by __JC__ D.C.
ELECTRONIC

Oct. 4, 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

James Sabatino
A.K.A "Jimmy"
A.K.A "Gutta"
    Plaintiff,

VS.     Case No:   **07-22638-CIV-COOKE/BROWN**

Sean Combs
A.K.A "Puff Daddy"
A.K.A "P. Diddy"
Bad Boy Entertainment Inc.
Justin Combs Publishing Inc.
Keisha Combs
    Defendants.

---

## Civil Complaint

    I, James, Sabatino, plaintiff in the above action, sues the defendants: Sean Combs, Bad Boy Entertainment Inc., Justin Combs Publishing Inc., and Keisha Combs. The grounds are as follows:

## Jurisdiction

    The Plaintiffs primary residence and place of business is in Broward County Florida, which is located in the southern district of Florida. The Defendant, Sean Combs, both owns property and conducts business in Dade County, which is also located in the southern district of Florida. At least one of the contracts the Plaintiff claims the Defendant breached was made and agreed upon in Dade County. Federal jurisdiction is invoked due to many of the claims affecting interstate commerce. The southern district of Florida is the proper place of venue.

## Background

(1) The defendant, Sean Combs, A.K.A. "Puff Daddy", A.K.A "P. Diddy", is the Chairman and Chief Executive Officer of Bad Boy Entertainment Inc. located in New York.
(2) The Defendant Justin Combs Publishing Inc. is an independent division of Bad Boy Entertainment Inc. This company is also owned by Sean Combs.
(3) The Defendant Bad Boy Entertainment is a record and entertainment company that has distribution agreements with "major labels".
(4) The Defendant Keisha Combs is a family member of Sean Combs and an employee of Bad Boy Entertainment Inc.
(5) Christopher Wallace, A.K.A. "The Notorious B.I.G". was a recording artist contracted to Bad Boy Entertainment Inc. Christopher Wallace was also a friend and business partner of the Plaintiff. Mr. Wallace was murdered in California on March 9, 1997.
(6) The Plaintiff, James Sabatino, was a close associate of Sean Combs and Christopher Wallace. While the Plaintiff was not a full time employee of Bad Boy Entertainment, he was hired as a consultant on a number of occasions.

## Statement of Facts

(7) From 1992 to present the Plaintiff, James Sabatino, was a friend and business associate of Christopher Wallace, the flagship recording artist on Bad Boy Entertainment Inc. During this time the Plaintiff became involved with the Defendant, Sean Combs.
(8) In December 1994, Christopher Wallace flew to Miami Florida at the Plaintiffs expense to perform a live show. While there the Plaintiff and Mr. Wallace went to South Beach Recording Studios. The Plaintiff and Mr. Wallace had discussed opening up their own entertainment company by the name of Soundstorm Entertainment. While at South Beach Studios Mr. Wallace and the Plaintiff agreed to have Mr. Wallace record some songs so that they could distribute them to Disc Jockeys and get the Soundstorm Entertainment name out to the public. That night Mr. Wallace went on to record 17 minutes and 54 seconds of "Free style" vocals.
(9) The Plaintiff and Mr. Wallace also recorded the session on a camcorder. The video footage was exactly 92 minutes and 14 seconds. The Plaintiff maintained possession of both the vocal and video recordings with the understanding that it was for the Plaintiffs use in starting Soundstorm Entertainment. While no formal contract between the Plaintiff was signed, the Plaintiff paid for all related expenses, such as studio time, air travel, hotel and transportation. The Plaintiff also has statements from a number of people who were present that confirm Mr. Wallace made the recordings for the Plaintiff.

Although to date, the Plaintiff is unaware that the ownership of the original recordings was ever in question.

(10) On March 9, 1997, Christopher Wallace was killed in what remains an unsolved homicide.

(11) In October 1997, the Plaintiff spoke with the Defendant, Sean Combs, to discuss the recordings and negotiated the transfer of the recordings from the Plaintiff to Bad Boy Entertainment. At this time Mr. Combs acknowledged that the Plaintiff was the rightful owner of the recordings. In fact, the Defendant Sean Combs asked the Plaintiff to promise not to release the recordings or allow anyone else to listen to them in any way. The Plaintiff agreed.

(12) After further negotiations, the Plaintiff and Sean Combs agreed to a fee of $200,000.00, two hundred thousand dollars, plus a to be determined amount of publishing when the songs were released. It was agreed that at least two, possibly three songs could be made from the almost 18 minutes of vocal material, maybe more if there were featured artists on the songs. It was also agreed that Mr. Combs could use the video footage for any purpose such as clips in a video. The Plaintiff and Mr. Combs agreed to complete the transaction after his "No Way Out World Tour" ended. The masters of the recordings were being held in a safe deposit box in New York.

(13) Upon completion of the tour the Plaintiff was indicted by the United States government in Miami, Florida. The Plaintiff contacted Mr. Combs through his criminal attorney and finalized the deal. The master recordings of both vocals and video footage was turned over to the Defendant, Sean Combs and Bad Boy Entertainment Inc. on December 27, 1998. Mr. Combs at the time issued a check drawn from a Bad Boy Entertainment Inc. account in the amount of $25,000.00, twenty five thousand dollars. The Defendant Sean Combs explained that he would forward the balance due within 60 days. The reason for the delay was because it was reported that the Los Angeles police department had named the Plaintiff as a "person of interest" in the murder of Christopher Wallace. This theory originates from the Federal Bureau of Investigations report that the Plaintiff was to meet Mr. Wallace that night, but never showed up. The Defendant Sean Combs was worried that if someone found out about Bad Boy Entertainment Inc. paying the Plaintiff this large amount of money it could be mistaken for something else.

(14) At the end of the 60 day period the Defendant Sean Combs still did not pay the remaining $175,000.00 owed. The Plaintiff wrote Mr. Combs to inquire about the status of the balance due on December 22, 1998. On January 12, 1999 the Plaintiff received a letter from the Defendant Keisha Combs on Bad Boy Entertainment letterhead. The letter explained that the Defendant Sean Combs was under a lot of "pressure" from law enforcement and would forward the remainder of the money as soon as things "cooled down".

(15) After another month went by, the Plaintiff wrote yet another letter to the Defendant Sean Combs. Mr. Combs replied on Bad Boy Entertainment letterhead asking the Plaintiff to call him as soon as possible. When the Plaintiff called Mr. Combs, he requested to visit the Plaintiff in prison, as he did not want to talk on the phone. The Plaintiff agreed and forwarded Mr. Combs a visiting form, however due to Federal Bureau of Prison rules the Defendant Sean Combs' request was denied. In his place the Defendant Keisha Combs was placed on the Plaintiff's visiting list. On May 31, 1999 the Defendant Keisha Combs came to visit the Plaintiff in the Federal Detention Center in Miami, Florida. During the visit Ms. Combs explained that the Defendant Sean Combs was just trying to find a way to pay the Plaintiff without bringing any attention to the reason. She went on to say that Mr. Combs was trying to be "creative" in finding a way to pay the Plaintiff. Ms. Combs promised that the balance owed would be paid soon.

(16) Later that night the Defendant Sean Combs did an interview on a major radio station in Miami, 99 Jamz (W.E.D.R.). During this interview M. Combs stated ... "I want to give a shout out to my man Jimmy on lock down in the Feds. Hold your head son, I got you. Just don't worry about nothing." The Plaintiff understood the phrase "I got you" to be a form of reassurance that he would receive the rest of the money owed. The next day the Defendant Sean Combs deposited $2,000.00 into the Plaintiff's prison account.

(17) On August 3, 1999 the Plaintiff received another letter from the defendant Keisha Combs. The letter stated that they were going to list the Plaintiff as a "creative consultant" for the Notorious B.I.G's album "Born Again". It said that the Plaintiff would share publishing rights. A contract was never forwarded.

(18) The Plaintiff received a letter from the Defendant Sean Combs on October 12, 1999 stating that the Plaintiff would be paid directly from the Defendant Justin Combs Publishing Inc. Mr. Combs stated that this should solve all of the problems they were having.

(19) On November 7, 1999 the Plaintiff spoke to the Defendant Sean Combs from prison via phone. Mr. Combs explained that he just spoke with law enforcement investigators working on the murder of Christopher Wallace. Mr. Combs claimed that he was asked if he thought it was possible if the Plaintiff had anything to do with the murder. Mr. Combs stated that he told the investigators that there was no possibility of the Plaintiff's involvement. However, the Plaintiff felt like Mr. Combs said this in a way to create a position of power for himself where the Plaintiff was no longer able to demand his money owed, due to fear of Mr. Combs telling investigators a different story, even if it was not true.

(20) The Plaintiff, while dealing with this own criminal charges, received his discovery. While reviewing the evidence he came across an interview between the Defendant Keisha Combs on behalf of Bad Boy Entertainment and it was her impression that he was trying to "pressure" money from the Defendant Sean Combs. Ms. Combs went on to say that the Plaintiff has been known to be violent and has threatened employees of Bad Boy Entertainment on prior occasions.

(21) Upon learning this, the Plaintiff attempted to contact the Defendant Sean Combs, to which all of his calls were diverted to the Defendant Keisha Combs. Ms. Combs claimed that she was speaking on behalf of Mr. Combs. Ms. Combs went on to say that because the Plaintiff was indicted by the U.S. government for fraud, no one would believe his claims. After a period of time, the Plaintiff got together all of the paperwork proving that the Defendant Sean Combs and Bad Boy Entertainment owed the Plaintiff $175,000.00. The Plaintiff then wrote a letter to Mr. Combs including all of the paperwork such as: the invoice for the studio session at South Beach Studios, the document showing the Defendant Sean Combs first payment of $25,000.00 drawn from a Bad Boy Entertainment account with Chase Bank in New York, a prison commissary deposit receipt from "Combs", and copies of all the letters sent by the Defendant Sean Combs, Keisha Combs and others at Bad Boy Entertainment.

(22) After the Plaintiff provided the documentation to the Defendant Sean Combs, he was contacted by a mutual friend of the Plaintiff and Keisha Combs. The third party relayed that this was all a misunderstanding and that Ms. Combs would talk to the Defendant Sean Combs right away to pay the rest of the money owed. As a good will gesture Ms. Combs sent the Plaintiff's family close to $20,000.00 worth of "Sean John" clothing from the Defendant Sean Combs' clothing line via Fed Ex. This was the last time the Plaintiff has spoken to Mr. Combs or anyone associated with Bad Boy Entertainment.

## Conclusion

Wherefore, the Plaintiff respectfully prays that this honorable court award the following:

(1) **Actual Damages:** The Plaintiff is asking this honorable court to award from the Defendants **$173,000.00, one hundred seventy three thousand dollars.** This amount is the original fee for both the audio and video recordings. The Plaintiff also asks for **$1,647,000.00, one million six hundred and forty seven thousand dollars,** which represents the amount of publishing old.
(2) **Punitive Damages:** The Plaintiff asks this honorable court to award the amount of **$18,200,000.00, eighteen million and two hundred thousand dollars.** Where the Plaintiff shows that the Defendants actions were both intentional and malicious. This amount is based on the actual damages times 10.
(3) Any other relief this honorable court deems just.


Signed this 28th day of Sept. 2007.

_____
James Sabatino
Reg#: 30906-004
U.S. Penitentiary
P.O. Box 3000
White Deer, PA   17887

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
JAMES SABATINO

### DEFENDANTS
SEAN COMBS; BAD BOY ENTERTAINMENT INC.; KEISHA COMBS; JUSTIN COMBS PUBLISHING.

(b) County of Residence of First Listed Plaintiff **BROWARD**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
REG# 30906-004
USP ALLENWOOD
PO BOX 3000
WHITE DEER, PA. 17887

Attorneys (If Known)
BAD BOY ENTERTAINMENT
1710 BROADWAY N.Y. N.Y. 10019

(d) Check County Where Action Arose: ☒MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

Dade 07-22638-CIV-COOKE/Brown

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☒ NO   b) Related Cases ☐ YES ☒ NO
JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
28 USC § 1332 DIVERSITY (MATTER IN CONTROVERSY EXCEEDS THE SUM OF $75,000)
LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 1,820.000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
DATE 9/28/07

FOR OFFICE USE ONLY
AMOUNT _____ RECEIPT # _____ IFP _____